IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

JULIO MEJIA,                           )
                                       )
                  Plaintiff,           )
                                       )
         v.                            )          Case No. 09-1373-WEB
                                       )
SAM DARROCH, MARIANO MUNIZ,            )
FINNEY COUNTY SHERIFF KEVIN            )
BASCUE, and the FINNEY COUNTY          )
SHERIFF'S OFFICE,                      )
                                       )
                  Defendants.          )

Memorandum and Order

        Plaintiff Julio Mejia filed the above entitled case alleging violations of civil rights

pursuant to 42 U.S.C. § 1983.  Defendants filed a Motion for Summary Judgment.  (Doc. 33).

I.  Facts

        1.  Mejia is a 44 year old, Guatemalan national who has lived in the United States for the

past 17 years.  Mejia works as a roofer.  Mejia is right-handed.  (Def. Exh. A, Mejia Depo., p. 4-

5, 9-10, 63-64).

        2.  On October 12-13, 2007, plaintiff worked a 14 or 15 hour shift, until 7:00 AM on

October 13, 2007.  After work, between the hours of 7:00 AM and 11:00 AM, Mejia rested,

sleeping not more than one and a half hours.  Mejia then spent the day moving, from 11:00 AM

until approximately 8:00 PM.  (Def. Exh. A, Mejia Depo., p. 25-27).

        3.  Mejia went to a party around 9:00 PM and consumed six or seven beers.  He left the

party at approximately 11:00 PM.  (Def. Exh. A, Mejia Depo., p. 28-29, 32).

        4.  Mejia fell asleep driving home.  (Def. Exh. A, Mejia Depo., p. 32).

        5.  Finney County Deputy Sam Darroch noticed plaintiff's vehicle because it was driving

in the wrong lane of traffic and heading directly toward Darroch.  Darroch became suspicious

that the driver may be intoxicated.  Darroch activated his emergency lights and initiated a traffic

stop.  (Def. Exh. B, Darroch Depo., p. 12-13).

6.  Darroch initially contacted Mejia while he was seated in his vehicle.  Darroch

determined Mejia could not speak English, and called Deputy Mariano Muniz to assist in

translation.  While waiting for Muniz to arrive, Darroch performed no testing on Mejia and did

not begin arrest proceedings.  (Def. Exh. B, Darroch Depo., p. 18).

7.  Mejia admitted to drinking and driving.  (Def. Exh. A, Mejia Depo, p. 33, 35, 39).

Muniz arrived within five minutes.  Darroch gave Mejia field sobriety tests and a

preliminary breath test.  Mejia was then arrested for Driving Under the Influence.  (Def. Exh. C,

Muniz Depo., p. 16).

8.  Darroch applied handcuffs to Mejia.  (Def. Exh. B, Darroch Depo., p. 24).

9.  Darroch received training from the Kansas Law Enforcement Training Center and

Finney County Sheriff's Department on the proper application of handcuffs.  (Def. Exh. B,

Darroch Depo., p. 20).

10.  The Finney County Sheriff Department's handcuff policy requires that officers place

an index finger between the wrist and the handcuff and then tighten the handcuff to the point

where it is touching the officer's finger, thus giving the handcuffed person a finger's width

clearance between the wrist and the handcuff.  (Def. Exh. B, Darroch Depo., p. 35-36; Def. Exh.

C, Muniz Depo., p. 11).

11.  Mejia alleges that he felt pain when the handcuffs were placed on his left wrist.

Mejia continued to feel pain in his left wrist while at the scene, in the patrol car, and at the jail.

(Def. Exh. A., Mejia Depo., p. 40 - 43).

12.   Mejia did not complain to the Spanish speaking deputy that there was any wrist pain when the handcuffs were placed on his wrists at the scene.   (Def. Exh. C, Muniz Depo., p. 23; Def. Exh. A, Mejia Depo., p. 42).

13.   Mejia did not tell Muniz or Darroch that the handcuffs hurt when they were initially applied in the field, or in the car on the way to the jail.  (Def. Exh. A, Mejia Depo., p. 41-42).

14.   Mejia was transported to the Finney County Jail, which took approximately five minutes.  Darroch was not aware of any comments made by Mejia regarding pain in his left wrist while in transport.  (Def. Exh. B, Darroch Depo., p. 26; Def. Exh. A, Mejia Depo., p. 42-43).

15.   Mejia alleges that when he arrived at the jail, the handcuffs were removed, and he was handcuffed, this time with his hands in front.  Mejia alleges that the left handcuff was too tight.  (Def. Exh. A, Mejia Depo., p. 47).

16.   Darroch stated that it is his preference that suspects have their hands cuffed in front of them while performing the Intoxilyzer 5000 testing in the jail.  However, Darroch does not recall if this is the procedure he used on this day.  (Def. Exh. B, Darroch Depo., p. 38-39).

17.   Mejia alleges that he made two verbal complaints, in English, that his left wrist hurt while completing the booking process at the jail.  He alleges he told Darroch that his wrist was swollen and hurting him at the same time he showed him his wrist.  Mejia alleges that a period of time later,  he told Darroch that the handcuffs were "squeezing" his wrists.  (Def. Exh. A, Mejia Depo., p. 45-47).

18.   Mejia did not tell anybody else at the jail about the pain in his wrist because he did not think it was that serious.  (Def. Exh. A, Mejia Depo., p. 49).

3

19.  Muniz interacted with Mejia for approximately 30 minutes, from the time he arrived on scene until he was in the intoxilyzer room at the law enforcement center.    (Def. Exh. C, Muniz Depo., p. 29).

20.  Mejia does not know exactly how long the handcuffs were on. (Def. Exh. A, Mejia Depo., p. 48-49).

21.  The Finney County Jail has a policy that no inmate can be booked into the jail if the inmate is reporting an injury without first receiving medical attention.  (Def. Exh. B, Darroch Depo., p. 38).

22.  Mejia did not request any medical treatment while at the jail.  (Def. Exh. A, Mejia Depo., p. 48).

23.  Mejia saw Doctor Garcia on November 5, 2007, for his wrist injury.  Mejia saw this doctor for approximately three months.  (Def. Exh. A, Mejia Depo., p. 53-54).   (Def. Exh. D, Medical Eval., p. 1).

24.  Mejia saw Doctor Murati on one occasion, May 18, 2010, in reference to the wrist injury.  The medical report states that Mejia has a left radial nerve entrapment injury which resulted in a 10% upper extremity impairment which is a direct result of the handcuff injury. (Def. Exh. A., Mejia Depo., p. 57; Def. Exh. D, Medical Eval., p. 1).

II.  Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Mejia alleges a violation of Federal Law under 42 U.S.C. § 1983.

III.  Standard

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56; Thomas v. Metropolitan Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011).  A
fact is "material" if under the substantive law it is essential to the proper disposition of the claim.
Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231-1232 (10th
Cir. 2001),  quoting Adler v. Wal-Mart Stores, 144 F.3d 664, 670 (10th Cir. 1998).  "An issue is
genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the
issue either way."  Adler, 144 F.3d at 670.  The court must "view the evidence and draw all
reasonable inferences therefrom in the light most favorable to the party opposing summary
judgment.  Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir.
2000).  Normally, the burden is on the moving party in a motion for summary judgment.  See
E.E.O.C. v. Horizon / MS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000).  However,
once a defendant raises a claim of qualified immunity, the plaintiff bears the heavy two part
burden of demonstrating that (1) the defendant violated a constitutional right and (2) the
constitutional right was clearly established at the time of the alleged conduct.  Reeves v.
Churchich, 484 F.3d 1244, 1250 (10th Cir. 2007).  "Qualified immunity protects government
officials performing discretionary functions from individual liability in federal claims unless
their conduct violates 'clearly established statutory or constitutional rights of which a reasonable
person would have known.'"  Nielander v. Board of County Com'rs of County of Republic,
Kan., 582 F.3d 1155, 1166 (10th Cir. 2009), quoting Shero v. City of Grove, 510 F.3d 1196,
1204 (10th Cir. 2007).  Qualified immunity should protect "all but the plainly incompetent or
those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89
L.Ed.2d 271 (1986).

IV.  <u>Discussion</u>

Mejia's complaint contains one claim, violation of civil rights pursuant to 42 U.S.C. § 1983.  Mejia alleges the actions of Darroch and Muniz, specifically the refusal of the officers to loosen his handcuffs after he complained of pain, constitute excessive force under the Fourth Amendment and Fourteenth Amendment.  Mejia alleges Sheriff Bascue and the Finney County Sheriff's Department did not properly hire, train, or supervise Deputy Darroch and Deputy Muniz.

Mejia does not specify whether he is suing Deputy Darroch and Deputy Muniz in their official or individual capacity.  The caption of the case does not indicate whether Darroch and Muniz were being sued in their individual and / or official capacity.   Personal capacity suits seek to impose personal liability upon a governmental official for actions taken under color of law.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Id.</u> at 165-66.  In <u>Kentucky v. Graham</u>,  the Court instructed that if the complaint does not clearly state whether the defendants are being sued individually and/or in their official capacities, the determination should be made by reviewing the course of the proceedings. <u>Id.</u> at 167 n. 14.  This Court previously filed an Order denying the Defendant's Motion to Dismiss.  (Doc. 18).  The Court stated that the claim against the deputy sheriff defendants were commenced against them "acting under color of state law."  In the petition, Mejia alleges that the "acts of Defendants Sam Darroch and Mariano Muniz alleged herein were done by Defendants, and each of them, under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Kansas and under the authority of their office as

6

Sheriff's Deputies for Finney County, Kansas."  (Doc. 1, p. 5, Petition).

Defendants argue they have qualified immunity, which implies they believe the case was filed against them in their individual capacity.  Mejia does not argue against this conclusion.  Further, Mejia has included the Sheriff and the Sheriff's Department in the suit, which leads the court to conclude that the officers were sued in their individual capacity and the Sheriff and the Department in their official capacity.  Therefore, the Court concludes Mejia is suing the deputies in their individual capacity.

Section 1983 provides a federal remedy for a violation of rights by state actors under the laws of the United States.  42 U.S.C. § 1983.  For recovery under section 1983, the plaintiff must prove that the defendant deprived him of a right under the Constitution and laws of the United States, and that this was done "under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."  Akickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); 42 U.S.C. § 1983. The plaintiff must show not only some form of personal involvement on the part of the individual defendants, Bruner v. Baker, 506 F.3d 1021, 1026 (10th Cir. 2007), but that the defendant "caused" the constitutional deprivation.  Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990).

a.  Darroch

The plaintiff must demonstrate (1) the defendant violated a constitution right and (2) it was clearly established.  Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).[1]  To recover on an excessive force handcuff case, plaintiff must show that the force used

---

[1]Saucier was overruled by Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), in which the Supreme Court overruled the mandatory order of the two-step sequence, but continued to recognize the beneficial application of the established protocol.

was more than reasonably necessary, and "some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." Cortez v. McCauley, 478 F.3d 1108, 1129 n. 25.  A showing of actual harm is required.  Id. at 1129, n. 25.  In Cortez, the Court found that when the plaintiff alleges some injury from the handcuffing, and alleges that an officer ignored the plaintiff's complaints that the handcuffs were too tight, the plaintiff can meet their burden that their constitutional rights were violated.  Id. at 1129.  In Fisher v. City of Las Cruces, 584 F.3d 888 (10th Cir. 2009), the court found that a handcuffing injury could be based on the officers fastening the handcuffs too tightly, or an injury based on the officer's manner of applying handcuffs.  Id. at 899.

Here, if the facts are as alleged by Mejia, a jury could find that Mejia's constitutional rights were violated by Deputy Darroch.  Mejia has established an actual injury, a loss of "10% left upper extremity impairment" of his left wrist.  Mejia allegedly notified Deputy Darroch on two occasions that the cuffs were too tight, and his complaints were ignored.

In evaluating a claim of excessive force, the Court should consider the facts and circumstances of each case to determine whether the force used was reasonable.  The Court must consider and balance the following factors:  the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  Graham, 490 U.S. at 396.  In the case at hand, there is no evidence before the court that Mejia posed an immediate threat to the safety of the officers.  Mejia waited in his own vehicle while waiting for Deputy Muniz to arrive on scene.  Mejia did not threaten the officers, nor were any weapons found on Mejia.  Mejia cooperated with the officers, and never attempted to resist arrest or escape.  The crime Mejia was

arrested for was driving under the influence, although it could be a felony, the danger was extinguished once Mejia was removed from the vehicle.  Applying the factors to the case at hand, if the facts are as Mejia alleges, the circumstances do not support a finding that the force applied was reasonable.

The next question is whether the right at issue was clearly established at the time of the alleged unlawful incident.   For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Medina v. City and County of Denver, 960 F.2d 1493, 1493 (10th Cir. 1992).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Saucier, 533 U.S. at 202.

In Vondrak v. City of Las Cruces, 535 F.3d 1198 (10th Cir. 2008), the plaintiff was stopped at a sobriety checkpoint, and after admitting to consuming half a beer three or four hours earlier, he was asked, and agreed to, field sobriety tests.  Vondrak failed the field sobriety tests, and was arrested for DUI.  Vondrak was placed in handcuffs, and told the officers half a dozen times that the handcuffs were too tight, his wrists were hurting, and going numb.  At the police station, while still handcuffed, officers administered the Intoxilyzer 5000 three different times, all three producing a blood-alcohol content reading of 0.00.  Officers held Vondrak for an additional one and a half hours before releasing him.  During that time period, Vondrak made additional requests for someone to loosen his handcuffs.  Vondrak claimed the handcuffs were too tight, and produced evidence of permanent radial nerve injury in his wrists, which interfered with his ability to practice as an orthodontist and play golf.  Id. at 1203.  The district court

denied the officers qualified immunity, and the Tenth Circuit affirmed.  Id. at 1208.  The Court found that although the officers claimed that they were unaware that "Vondrak's handcuffs were tight, Vondrak has presented evidence that the officers 'ignored [his] timely complaints (or [were] otherwise made aware) that the handcuffs were too tight.'" Id. at 1209, citing Cortez, 478 F.3d at 1129.  The Court also found that Vondrak presented evidence that he suffered a permanent, actual injury as a result of the handcuffing.  Vondrak presented evidence that the pain in his wrists had not subsided, he had permanent nerve injury in his wrists, and the injuries were a direct result of the handcuffs.  Id.

The law is established that a triable claim of excessive force exists where a jury could reasonably conclude that an officer ignored the complaints of a cooperating arrestee regarding handcuffs that are too tight.  The Vondrak and Fisher cases confirm that the right at issue is clearly established law.  Deputy Darroch is not entitled to qualified immunity on Mejia's excessive force claim.

b. Muniz

The next question is whether Deputy Muniz is entitled to qualified immunity.  Deputy Muniz assisted Deputy Darroch in translation at the scene, and according to both deputies, was present in the jail before Mejia was booked and placed in a cell.  Mejia states that Muniz was not present at the jail, but another individual who has not been identified, was in the room with him and Deputy Darroch.  (Depo. P. 43) When asked whether he was making a claim against the deputy who interpreted, Mejia stated he was not, as he was not present at the time the incident occurred.  (Depo. P. 60).  Clearly, there is a question of fact whether Muniz was present when Mejia complained his handcuffs were too tight.

To prevail on a claim under § 1983, the plaintiff must establish that the defendant was personally involved in the alleged constitutional violation.  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  To establish personal involvement, the plaintiff must establish an "affirmative link" between the conduct and the violation.  Stidham v. Peace Officers Stds. & Training, 265 F.3d 114, 1156 (10th Cir. 2001).

There is established law that an officer has an affirmative duty to "intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  In Vondrak, the Court found the assisting officer was not entitled to qualified immunity.  The Court stated that "given Krause's close proximity to the initial handcuffing, and his presence immediately thereafter, the district court was correct in denying qualified immunity to Krause on the excessive force claim."  Id. at 1210.  The Court found the law was "clearly established" that Krause was not entitled to qualified immunity:

> "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.  In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.  Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  Id., citing Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

However, the Court does not reach this analysis, since Mejia must first allege sufficient facts to show a section 1983 claim.  The plaintiff must allege some form of personal involvement on the part of the individual defendant.  Mejia has failed to allege any personal involvement by

11

Muniz in failing to loosen or remove his handcuffs.  The question before the court is whether there are facts for a jury to find that *this defendant* violated Mejia's constitutional rights.

Mejia states in his deposition that Muniz was not present at the time the incident occurred.  In two other parts of the deposition, Mejia states that the Spanish speaking officer was not in the room when he complained.  If the facts are as Mejia alleges, then Mejia has not set forth any facts to show that Muniz had any personal involvement in the alleged constitutional violation.  Mejia cannot show that Muniz had an affirmative duty to intervene if Muniz was not present when the incident occurred.  Mejia must allege personal involvement on the part of the individual defendant, which Mejia has not done.  Under the facts alleged, Muniz is entitled to qualified immunity.

c.  Sheriff Bascue and the Sheriff's Department

Supervisors may be liable for a subordinate's violation of a citizen's constitutional right. The liability of a supervisor is predicated on the supervisor's deliberate indifference, not just negligence.  Langley v. Adams County, Colo., 987 F.2d 1473, 1481 (10th Cir. 1993). "Deliberate indifference" means the defendant must know he is "creating a substantial risk of bodily harm."  Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997), citing Billman v. Indiana Department of Corrections, et al., 56 F.3d 785, 788 (7th Cir. 1995).  The burden is on the plaintiff to establish an "affirmative link" between the violation of the constitutional right and the supervisor's "personal participation, his exercise of control or direction, or his failure to supervise."  Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988).   A supervisor can also be held responsible where there is a complete failure to train, or when training is inadequate.  Id. at 1528, citing Hays v. Jefferson County, 668 F.2d 869, 873-74 (6th Cir.), *cert denied*, 459 U.S.

833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).  "The inadequacy of policy training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  The Tenth Circuit has ruled that the standard for § 1983 cases has not changed following Ashcroft v. Iqbal,   U.S. ,129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights ... secured by the Constitution.'" Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010) quoting 42 U.S.C. § 1983.  The Dodds Court determined that in a § 1983 suit, the plaintiff must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  Id.  Finally, the Court stated that Iqbal did not alter the Supreme Court's § 1983 causation and personal involvement analysis.  Id. at 1200.

Mejia did not set forth any argument that the Sheriff implemented a policy which caused the alleged constitutional harm.  Mejia has not set forth any facts to establish personal involvement by the Sheriff.  Mejia has made a conclusory statement in the complaint that the officers were not trained on handcuffing policies, but has cited to no evidence in support of the conclusion.  The record shows that Deputy Darroch stated that he was provided specific training through the department on handcuffing procedures.

Viewing the facts in the light most favorable to the Plaintiff, a reasonable jury could not

13

find the Sheriff was deliberately indifferent in failing to train, the Sheriff established unconstitutional training procedures, or that any law was violated in training members of the Department.

Mejia has also filed a Section 1983 claim against the Finney County Sheriff's Department.  A governmental entity or its policy makers may be liable pursuant to § 1983 if the entity's policies or customs are the cause or the "moving force" behind the underlying constitutional deprivation.  Myers v. Oklahoma County Bd. Of County Comm'rs, 151 F.3d 1313, 1317 (10th Cir. 1998).  A plaintiff shows governmental liability pursuant to § 1983 if evidence is presented (1) that a municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation.  Id. at 1317.  A Sheriff's Department may also be held liable for decisions made by officials who have authority under state law to speak as a final decision makers on a particular issue.  Ireland v. Jefferson County Sheriff's Dept., 193 F.Supp.2d 1201, 1226 (D.Colo. 2002), citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

The analysis for the department does not differ from the analysis for the Sheriff, as Mejia has not set forth any argument on why or how the department is liable.  Mejia has not set forth any evidence to link a policy or custom to the alleged constitutional deprivation, or to show that the department had a policy that was a "moving force" behind the alleged conduct.  Sheriff Bascue and the Finney County Sheriff's Office are entitled to qualified immunity and are dismissed.

V.  Conclusion

IT IS THEREFORE ORDERED that Deputy Darroch, Deputy Muniz, Sheriff Bascue,

and the Finney County Sheriff's Department Motion for Summary Judgment (Doc. 33) is granted in part and denied in part.  Summary judgment is granted as to Deputy Muniz, Sheriff Bascue, and the Finney County Sheriff's Department.  Summary Judgment is denied as to Deputy Darroch.

IT IS FURTHER ORDERED that this case be referred to the Magistrate Judge for a Pre-Trial Order.  Following the entry of the pre-trial order, the case will be set for trial.

IT IS SO ORDERED this 26th day of September, 2011.


    s/ Wesley E. Brown
Wesley E. Brown
Senior United States District Court Judge

15